DOMINGO PIOVANETTI ANTONSANTI ET AL., Plaintiffs and Appellants, v. ANTONIO VIVALDI PACHECO, Defendant and Appellee.

No. 11594.  Submitted June 11, 1956.—Decided June 28, 1957.

*Guillermo S. Pierluisi* for appellants. *Oscar Souffront* for appellee.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

By deed executed on January 20, 1925, plaintiff Domingo Piovanetti and his wife constituted a voluntary mortgage on a property to secure to defendant Vivaldi the payment of the sum of $2,100 principal on a loan with interest at 12 per cent per annum and $250 for costs, expenses and attorney's fees in case of judicial claim. The mortgaged property was community property belonging to the debtors. They bound themselves to pay the principal in three installments, the last of which was due on January 1, 1928. Furthermore, the following was stipulated as to the interest: "the interest stipulated in this contract is 12 per cent per annum, which

the debtors bind themselves to pay to the creditor Antonio Vivaldi Pacheco in annual payments as they become due." Said mortgage was duly recorded in the Registry of Property. Subsequently, when the mortgagors failed to comply with the obligation to pay, the mortgagee (defendant herein) filed a summary foreclosure proceeding to obtain the secured credits. In his original petition, which he filed on February 21, 1929, he made the following computations:

| | |
|---|---|
| Principal of the debt............... | $2,100.00 |
| Interest at 12 per cent until January 29, 1929.............. | 1,008.00 |
| | $3,108.00 |
| Credit of interest.................. | 500.00 |
| Difference | $2,608.00 |
| Expenses, costs and foreclosure fees.................... | 250.00 |
| Total | $2,858.00 |

The mortgagee also claimed in said petition "the interest on $2,100 from January 29, 1929, at 12 per cent per annum until the total liquidation of the debt."

The foreclosing creditor having complied with the other requirements of the summary proceeding, the Marshal of the Court served the debtor Domingo Piovanetti with process, on March 11, 1929, and after 30 days had elapsed without the debtor making the payment, the mortgaged property was ordered to be sold at public auction on July 6, 1929, at the instance of the mortgagee. The property was foreclosed according to the provisions of law. Finally, it was awarded to the mortgagee for the sum of $250 as against his claim and the corresponding deed of judicial sale of the property was executed and recorded in the Registry in the name of Vivaldi Pacheco, as it still appears at present.

In 1953 the mortgagor Piovanetti and the heirs of his wife filed the present action of revendication and recovery

of fruits on the ground that the summary foreclosure proceeding is void. In their complaint and at the trial in the Superior Court they alleged as grounds for such nullity: *first*, that the mortgagee was charging more than the amount due as principal and interest of the mortgage debt, since a certain deposit of $500 made to the mortgagee in 1925 reduced the principal to the sum of $1,831; and *second*, that the Marshal of the court did not serve the wife of the mortgagor with process.

The case was heard and the lower court dismissed the complaint. As a question of fact it determined that the credit of $500 was made in the year 1928; that on that date a sum exceeding that amount was owed as interest due on the principal debt; and that the aforesaid sum was actually credited to such overdue interest as was stated in the initial petition of the foreclosure proceeding.[1] It further held that, since the property in question was community property, the service of process made by the marshal of the court on the husband, was sufficient. Therefore, it held that "the mortgagee and now defendant claimed in the foreclosure proceeding only the amounts which were really and actually owed to him as principal, interest, costs and fees of the mortgage credit," and that said summary proceeding "was valid in all its parts as well as the adjudication of the property . . . to the mortgagee."[2]

■ In this appeal brought by the plaintiffs, it is pointed out in the first place that the summary foreclosure proceeding is void because the mortgagor's wife was not personally served with process by the marshal of the court. Actually, this assignment does not deserve serious consideration. The

---

[1] Plaintiffs' contention is that the credit of $500 was made in 1925 reducing the principal of the mortgage loan to the sum of $1,831 and that, therefore, the sum of $231 should have been credited to the interest due and the remaining $269 to the principal owed.

[2] Having reached the former conclusion, the Superior Court made no pronouncement concerning the reconvention filed by the defendant in this case.

wife is not a necessary party in a suit where it is intended to collect a debt secured by real property belonging to the conjugal partnership and, therefore, the case law has established that the service of process made to the husband as legal representative of the conjugal partnership suffices in a foreclosure proceeding. *Porto Rican Leaf Tobacco Co.* v. *Ereño*, 16 P.R.R. 96 (1910), and *Torres* v. *Lothrop, Luce & Co. et al.*, 16 P.R.R. 172, 177 (1910). See, also, Muñoz Morales, *Lecciones de Derecho Hipotecario*, Vol. II, pp. 195 and 210.

■■ In the second place, plaintiffs allege that the summary foreclosure proceeding filed by the defendant is null because the mortgagee could not charge interest at the rate of 12 per cent from maturity date until final payment of the debt, which he did as stated in the initial petition on record. Although the appellee admits that there was no stipulation either in the loan contract or in the mortgage concerning interest after the expiration of the contractual term or in case of default, yet he alleges that he was entitled to recover interest at 12 per cent per annum on the principal of the loan within the summary foreclosure proceeding "up to the time of maturity as well as in case of default . . . because this was the only rate of interest stipulated in said mortgage contract." He further alleges that the ground of annulment to which this second assignment of error refers was never specifically raised in the Superior Court and that, therefore, it is a new question which may not be raised on appeal.

Before going any further, we must point out as an initial step to analyze the questions raised, that the mortgage deed merely stipulated the interest to be paid on the principal of the loan *during the term of the contract*. There was no agreement as to interest after maturity of the debt. Nor was there any agreement as to interest in case of default. This fact clearly appears from the only stipulation concerning interest which is set forth in the loan contract attached

to the mortgage deed: "The interest stipulated in this contract is 12 per cent per annum, which the debtors bind themselves to pay to the creditor Antonio Vivaldi Pacheco in annual payments as they become due." The sense of said clause leaves no room for doubt and its scope may not be changed by spurious interpretations: the debtor only bound himself to pay interest for the duration of the loan contract.

Taking into account what was agreed in the deed concerning the interest that the debtor was bound to pay to the mortgagee, such interest at the rate of 12 per cent after maturity of the obligation could not be recovered in a summary foreclosure proceeding. The only interest that could be claimed was legal interest at the rate of 6 per cent per annum from the date the mortgagor defaulted. This has been repeatedly held by this Court in a long line of cases. See, among others, *Buil* v. *Banco Popular*, 69 P.R.R. 237 (1948); *Arvelo* v. *Román*, 65 P.R.R. 699 (1946); *Figueroa* v. *Boneta*, 58 P.R.R. 811 (1941); *Cabrera* v. *Morales*, 57 P.R.R. 445 (1940); *Caraballo* v. *Registrar*, 48 P.R.R. 902 (1935); *Goico* v. *Rodríguez*, 28 P.R.R. 493 (1920); and 30 P.R.R. 563 (1922). Of course, the loan contract may provide that not only shall interest be paid during the contractual term of the debt but also after maturity date. For example: upon stipulating the rate of annual interest on the principal of the loan, the contracting parties may expressly provide in the mortgage deed that the sum loaned shall accrue interest *"until its total reimbursement"* (*Figueroa Rodríguez* v. *Ramírez*, 36 P.R.R. 826) or *"until the indebtedness is fully settled"* (*Torres* v. *Fernández*, 65 P.R.R. 584) or *"until full payment"* (*F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 P.R.R. 498). In all those cases we held that the creditor may recover in a summary foreclosure proceeding *all* interest due and unpaid up to the total liquidation of the principal debt where there is no third party whose interests might be prejudiced. Sections 114, 145 and 147 of the Mortgage Law (30 L.P.R.A. §§ 210, 258 and 260). However, in the absence of such

express agreement the only interest which the principal of the loan accrues, after maturity of the obligation, is the legal interest at the rate of 6 per cent per annum from the date on which the debtor is in default. The jurisprudential norms stated apply and develop the statutory rule that, whether in civil or in commercial loans no interest shall accrue unless there is an agreement to that effect. Section 1646 of the Civil Code (1930 ed.), 31 L.P.R.A. § 4573, and § 232 of the Code of Commerce (1932), 10 L.P.R.A. § 1654.

In the case of *Altuna* v. *Ortiz*, 12 P.R.R. 318 (1907), which was implicitly overruled by this Court in subsequent cases, we held that the creditor may recover in the foreclosure proceeding all interest due up to the total liquidation of the principal debt at the agreed rate of 9 per cent per annum, even if the debtor only bound himself to return the principal sum loaned "on August 31, 1899 with interest at the rate of 9 per cent per annum payable annually at the end of each year." Said decision was based exclusively on the provisions of § § 114 and 147 of the Mortgage Law:

"A mortgage constituted to secure a credit which earns interest, shall secure with regard to third persons, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued." (Art. 114)

"A mortgage creditor may proceed against the property mortgaged to recover interest due, no matter at what time the principal is payable; but if there should be a third person interested in said property whom the proceedings might prejudice, the sum demanded can not exceed a sum representing the unpaid interest due for the two years last past and the part due for the current year." (Art. 147)

However, those sections of our Mortgage Law do not provide for any suppletory juridical rule in the absence of an express agreement as to the payment of interest on the principal of a loan after maturity of the obligation. The only purpose of the aforesaid sections is to establish to what degree does the mortgage securing the principal credit also extends

to the interest which has been stipulated in the deed, at a fixed rate, *when the interested parties have not expressly agreed that such interest shall be secured by the mortgage.* In other words, when the interest stipulated in the mortgage has not been expressly guaranteed, § 114 of the Mortgage Law establishes that by operation of law the mortgage secures in addition to the principal, the interest earned by the credit against subsequent purchasers up to the top rate therein indicated. And under § 147, even if the parties have not expressly secured by mortgage the interest *agreed* on the principal credit, they may recover within the foreclosure proceeding all interest stipulated therein (which are due, unpaid and have not prescribed) if no acts of alienation or encumbrance on the mortgaged property have been executed and, hence, there is no third person who might be prejudiced. Morell, *Comentarios a la Legislación Hipotecaria,* Vol. III pp. 736 *et seq.* (2d ed.) ; Roca Sastre, *Derecho Hipotecario,* Vol. IV, pp. 267 *et seq.* See *Torres* v. *Fernández, supra.*[3] But when the interested parties make no agreements in the deed as to interest after the maturity date, and on the contrary, they only stipulate interest during the contractual term, § § 114 and 147 of the Mortgage Law do not repeal the provisions of the Civil Code and of the Code of Commerce to the effect that interest shall not accrue unless there is an express agreement to that effect.

The mortgage is always accessory to the loan contract. Thus, it is essential to separate two problems: *first,* what did the parties agree as to the payment of interest in the loan contract?, and *second,* what interest is secured by the mortgaged property? The first question does not depend at all on the Mortgage Law. It must be decided bearing in mind only the will of the parties which in the matter of contracts is a law which must be obeyed, as well as the

---

[3] This is the only doctrine established by the judgments of the Supreme Court of Spain of October 17, 1932 (205 *Jurisprudencia Civil* 586) and March 18, 1946 (14 *Jurisprudencia Civil* (2d s.) 160).

suppletory provisions contained in the Civil Code and in the Code of Commerce. The second does depend on the provisions of §§ 114, 145 and 147 of our Mortgage Law for then it must be determined what portion of the interest earned by the credit (stipulated between the parties) is secured by mortgage against the original mortgagor or against third purchasers. Thus, Morell, referring to the aforesaid § 114 of the Mortgage Law, states the following:

"Barrachina, presents the following question: Does the fact that the mortgage is extended to the interest includes only the interest accrued and not paid within the term of the loan contract, or also the interest running after the expiration of the term of the contract, which interest accrues only because the mortgagee has failed to foreclose the property after the guaranteed obligation has matured?

" 'The legal provision,' he says, 'is conclusive; it does not distinguish between different kinds of annual payments; the mortgage secures them all if no prejudice is caused to a third party; if there is a third party, either because he has acquired the real property or because it is encumbered in his favor, the release from responsibility occurs and the mortgage only secures the interest corresponding to such annual payments; which means that the mortgage burden entails, in that respect, two responsibilities: one concerning the principal credit, the other the interest limited to the period of time previously referred to; a criterion that renders the words "shall secure," employed in the provision which covers these two responsibilities, as meaning the unit of guarantee of the mortgagee's right, running hand in hand with the unit thing encumbered by the obligation, of principal as well as of interest.

" 'There is no law compelling the mortgagee to foreclose as soon as the obligation expires; he already knows that the latter prescribes and in the course of the 20 years which is the lifetime of the mortgage foreclosure proceeding, he avails of his right by not claiming; he will suffer enough prejudice if he lets year after year run without collecting the interest, for he may fall squarely within § 114 if there are other subsequent mortgagees, and for such reason he will be entitled only, as a penalty for his passiveness, to interest for not more than three years.'

*"Now then; as to the interest subsequent to the maturity date of the obligation, one must adhere to whatever is deemed proper under the stipulations of the contract to that effect, for it might happen that only interest at the legal rate may be recovered from the time it is lawfully inferred that the mortgagor incurred in default."* (Italics ours.) 3 Morell, *Comentarios a la Legislación Hipotecaria* (2d ed., 1928) 745–46.[4]

It is true that Roca Sastre, referring to § 114 of the Mortgage Law, states that the interest accrued after expiration of the debt "is earned within a period of implied extension of the contractual term," adducing the argument that "if it were not so the law would rather impel the creditor to exercise his right of foreclosure depriving the mortgagor of the comfort which he derives from the tolerance of the mortgagee in referring from claiming the reimbursement of the loan . . ." (*Derecho Hipotecario*, Vol. 4, p. 274). But we find no legal justification whatsoever for the alleged theory that by operation of law there is always an implied extension after the expiration of the obligation which permits the mortgagee to recover interest at the rate agreed for the term of the contract. If there is no agreement concerning the interest after the expiration of the debt, the mortgagee may only recover, in addition to the interest accrued during the contractual term, the interest at the legal rate from the date the mortgagor is in default. See §§ 1053–61 of the Civil Code of Puerto Rico (1930 ed.), 31 L.P.R.A. §§ 3017–25. This last rule, contrary to Roca Sastre's theory, is in our opinion more favorable to the mortgagor, for, as a general rule, it tends to reduce the rate

---

[4] For that same reason Morell, in commenting § 145 of the Mortgage Law, which provides: "The interest on the loan shall not be held to be secured by the mortgage in the form prescribed by article 114, unless the record itself shall show the agreement and amount of such interest," merely states that "this article should be a part of § 114, previously commented," but he adds—and this is very significant—: *"pursuant to § 1755 of the Civil Code (corresponding to § 1646 of our Civil Code— 1930 ed.), interest shall not accrue, unless expressly stipulated."* (Italics ours.) 4 Morell, *op. cit.*, 225.

of interest. Furthermore, if the mortgagee demands interest in excess of 6 per cent, as a condition for not claiming the return of the loan, it would suffice to execute another mortgage deed.

■■ In the case at bar, the default interest began to run from the maturity date of the obligation for the mortgagee extrajudicially required the mortgagor to pay the obligation on the same day of maturity and default. We need not decide whether the mortgagor of an obligation by installments which consists in payment of money is in default from the date of maturity without need of judicial or extrajudicial demand on the part of the mortgagee. Pursuant to § 1053 of the Civil Code of Puerto Rico (31 L.P.R.A. § 3017), demand by the creditor is not necessary to create the default where the designation of the time when the thing should have been surrendered was an operative factor to establish the obligation. This notwithstanding, the doctrine maintains that, as far as civil obligations by instalments are concerned, even when they consist in the payment of money, the demand is necessary to create default. See Manresa, *Código Civil Español*, Vol. VII (5th ed.), pp. 124 *et seq.*; 243 *et seq.*; Scaevola, *Código Civil*, Vol. XIX, pp. 451 *et seq.*; Castán, *Derecho Civil Español*, Vol. III, pp. 140 *et seq.* Of course, the demand by the creditor is not necessary to create the default when the obligation expressly provides for it. And as to commercial obligations in contracts in which a day is fixed for compliance therewith by the will of the parties or by law, the effects of delay shall begin on the day following the one on which they fall due. Section 94 of the Code of Commerce (1932) 10 L.P.R.A. § 1314.[5]

---

[5] In *Cintrón & Aboy* v. *Solá*, 22 P.R.R. 245, 254–55 (1915), it was stated that demand by the creditor was not necessary because it had been expressly stipulated between the parties that the amount owed would earn interest at 12 per cent per annum in case of default, it being also stated that in the case of a commercial loan the debtors were bound to pay the interest agreed upon on the day following the one on which the interest fell due.

Often, these questions become academic, since in the promissory notes, loan contracts and mortgages to secure the loans, the parties as a rule expressly stipulate the interest that the debt shall earn after maturity or they provide that the demand by the creditor shall not be necessary to create default once the obligation is not performed.

In short, therefore, in the summary foreclosure proceeding the mortgagee (defendant-appellee herein) claimed interest at 12 per cent per annum after the total expiration of the debt, when actually he could only recover the default interest at the rate of 6 per cent per annum. There is no question that such action renders null the foreclosure proceeding. In the first place, it is necessary to adhere strictly to the procedures and requirements of the summary proceeding, and any departure therefrom shall render the action void. In the second place, the claim of excessive interest which is not secured by mortgage, constitutes a substantial error in prejudice of the mortgagor's rights and consequently, invalidates the summary foreclosure proceeding. See, for example: *Buil* v. *Banco Popular, supra; Torres* v. *Fernández, supra; Figueroa* v. *Boneta, supra;* and *Vázquez* v. *Gutiérrez,* 52 P.R.R. 162 (1937).[6] There still remains to consider, however, appellee's contention to the effect that the

---

[6] The seventh clause of the mortgage deed provided the following: "To secure payment of the loan in question, *as well as the interest earned thereby up to the sum of two hundred and fifty dollars,* and the costs, expenses and attorney's fees, in case of judicial claim, to the extent of two hundred and fifty dollars, the spouses Domingo Piovanetti and Clarisa Dumont constitute a voluntary mortgage . . . etc." But obviously, said special mortgage was only constituted as far as the interest is concerned, to limit the security of the latter to the prejudice of third parties. We have repeatedly held that the same does not refer to the mortgagor unless otherwise clearly and expressly provided. Moreover: here the mortgage was constituted *to secure payment of the loan in question* whereby it is unquestionable that the mortgagee could recover interest from the original debtor by mortgage even if they exceeded the sum of two hundred and fifty dollars. See *Gutiérrez Vda. de Crosas* v. *Longpré,* 44 P.R.R. 643, 653 (1933); *Torres* v. *Fernández, supra,* at pp. 631–34; *Arvelo* v. *Román, supra; Díaz* v. *Quiñones,* 68 P.R.R. 232 (1948).

aforesaid ground of annulment was not raised in the lower court for which reason it may not be raised now on appeal.

■■ In truth, the question concerning the rate of interest due after maturity date was never raised in the lower court. The nullity of the summary foreclosure proceeding was alleged, in general terms, because "the mortgagee was charging more than the amount owed as principal and/or interest . . .", but specifically the only ground adduced to support said contention was that the plaintiffs made a deposit of $500 in 1925 of which $231 should have been credited to past-due interest and $269 to the mortgage debt, thus reducing the principal of the loan to the sum of $1,831. And, on the basis of the evidence introduced, the trial judge determined that said deposit was made in 1928 and that it was duly credited to the interest due and unpaid. We must not forget, however, that it was proved at the trial: first, that the agreement between the parties was to pay 12 per cent interest *only* during the term of the contract; and second, that the creditor in the foreclosure proceeding claimed interest at the rate of 12 per cent per annum after maturity date. Both are unquestionable facts which appear from the mortgage deed and from the original petition of the summary foreclosure proceeding, which were introduced and admitted in evidence in the lower court.

In our opinion, the question concerning the rate of interest due after maturity constitutes a mere *ground* to support the basic contention of the plaintiffs: that the foreclosure proceeding is void. The plaintiffs adduced an improper justification of their rights but it is unquestionable that these rights were duly claimed in the Superior Court. There is nothing to prevent us from considering, on appeal, a new right of action which was not raised in the lower court as basis for a contention set forth in the complaint. See *Marconi Wireless Co.* v. *United States*, 320 U. S. 1, 44 (1943) ; Campbell, *Extent to Which Courts of Review Will Consider Questions Not Properly Raised and Preserved*, 7 Wisc. L.

Rev. 91, 160 (1932), 8 *id.* 147 (1933) ; 4 C.J.S., *Appeal and Error*, § 242. Moreover, even if such ground was not alleged by the plaintiffs, the complaint must be considered as amended, even on appeal, by the evidence which was introduced without objection at the trial since in this case such implied amendment does not prejudice the defendant, that is to say, he had ample opportunity to defend himself and no additional evidence could change the facts revealed by the mortgage deed and by the initial petition of the summary foreclosure proceeding. See Rule 15(*b*) of the Rules of Civil Procedure, 32 L.P.R.A. App., R. 15(*b*) ; *Ponce v. Badrena e Hijos, Inc.*, 74 P.R.R. 210, 227 (1952) ; *Sosa v. Municipal Housing Authority*, 72 P.R.R. 764, 768 (1951) ; *Fernández v. Condado Beach Hotel*, 72 P.R.R. 880, 883 (1951) ; 3 Moore, *Federal Practice* (2d ed.) pp. 846–48.

Finally, even considering the question of the interest recovered after maturity "as a new question," we cannot apply in this case the general rule that on appeal this Court "will not consider or decide any question not raised or decided by the court . . . from whose judgment . . . the appeal has been taken." *P. R. Housing Authority v. Sagastivelza*, 71 P.R.R. 406, 409 (1950). This principle is not an unbreakable dogma but it has many exceptions and limitations. 3 Am. Jur., *Appeal and Error*, §§ 246 *et seq.*; 4 C.J.S., *Appeal and Error*, §§ 242 *et seq.* Although its usefulness is unquestionable in our procedural system, we must apply it with great caution avoiding the strictness and inflexibility of an automatic rule. Pound, *Appellate Procedure in Civil Cases* (1941), 133–35, 298–304, 387–88; *Raising New Issues on Appeal*, 64 Harv. L. Rev. 652 (1951). It is true that at times we have set forth the aforesaid procedural rule with exaggerated latitude.[7] But undoubtedly we must dis-

[7] See *Ex parte Soto*, 71 P.R.R. 511 (1950); *Figueroa v. Guerra*, 69 P.R.R. 565 (1949); *F. Rodríguez Hnos. & Co. v. Aboy*, 66 P.R.R. 521 (1946); *Flores v. Silva*, 60 P.R.R. 363 (1942); *Municipality v. Public Service Comm.*, 53 P.R.R. 276 (1938); *McCormick v. McCormick*, 52 P.R.R. 669 (1938); *Largé & Acevedo v. Fernández*, 38 P.R.R. 453, (1928).

card the outmoded theory that an appellant may never change, on appeal, his theory of the case. This is only a ritual which is inconsistent with the need of deciding the cases on the merits. *Cf.* Moore, *op. cit., supra;* Clark, *Code Pleading* (1947), 263; Millar, *The Old Régime and the New in Civil Procedure,* 14 N.Y.U.L.Q. Rev. 1, 192, 201–03 (1937). See, however, *Latorre* v. *Cruz,* 67 P.R.R. 696 (1947). Thus, if the issue raised for the first time on appeal does not actually raise any controversy, but on the contrary, only involves a question of law, the determination of which will bring about a final judgment on appeal, we could not refuse to consider it without failing in our duty of imparting justice and searching for the truth in each litigation.[8] A well-ordered system of procedure is essential. But a suit is not a game which should be played within a frame well adjusted to technicalities. *Cf. Serra* v. *Transportation Authority,* 68 P.R.R. 581, 584 (1948); and *Meléndez* v. *Iturrondo,* 71 P.R.R. 56, 60 (1950). We must repeat

---

[8] *Hormel* v. *Helvering,* 312 U. S. 552, 556–59 (1940); *Marconi Wireless Co.* v. *United States,* 320 U. S. 1, 44 (1943); Pound, *op. cit., supra; Raising New Issues on Appeal,* 64 Harv. L. Rev. 652 (1951). It is possible that the question of law raised for the first time on appeal depends on facts which might have been proved at the trial but which do not appear of record because one of the parties did not raise the question in the lower court. In that case, generally, we could not consider said question of law on appeal. The reason is obvious: one of the parties would be unduly prejudiced by depriving him of his opportunity to defend himself by introducing additional evidence which he might have introduced in the lower court to confront the question of law which was never raised there. Furthermore, we should point out that certain privileged defenses are waived upon failure to plead them in the lower court, for example: (1) the defense of prescription (*Peña* v. *Eastern Sugar Associates,* 75 P.R.R. 288, 308, 321, and *Fornaris* v. *Font,* 44 P.R.R. 580); (2) the defense of *laches* in an injunction suit (*Rivera* v. *De Choudens,* 63 P.R.R. 955, 958). But the question of lack of jurisdiction over the subject matter may always be raised for the first time on appeal, either by the parties or by the court *motu proprio. Cf. Borinquen Furniture, Inc.* v. *District Court,* 78 P.R.R. 858, 859–60 (1956); *West India Oil Co.* v. *Buscaglia, Treas.,* 66 P.R.R. 102 (1946); *Russell & Co.* v. *Public Service Commission,* 66 P.R.R. 355 (1946). As to other additional defenses, based on the invalidity of a contract or the unconstitutionality of a law, *Cf. Raising New Issues on Appeal,* 64 Harv. L. Rev. 661–62 (1951).

it *ad nauseam*, even if only as a reminder of what everybody admits, because no system of law may survive if, on the basis of procedural niceties which are unnecessary, the possibility of doing substantial justice is smothered.[9]

The judgment will be reversed and the case remanded to the lower court for further proceedings consistent with this opinion.

Mr. Justice Marrero and Mr. Justice Negrón Fernández did not take part herein.

Mr. Justice Belaval, dissenting.

This case deals with the annulment of a summary foreclosure proceeding because interest was collected at the stipulated rate after maturity of an obligation secured by mortgage. The clauses of the mortgage deed concerning the interest read:

"Fourth: The aforesaid spouses Domingo Piovanetti and Clarisa Dumont, acknowledge and confess themselves to be the debtors of Antonio Vivaldi Pacheco, for the sum of two thousand one hundred dollars which they have received from the latter as loan, prior to this act and to their entire satisfaction, whereby they grant for that amount a receipt of payment.

"Fifth: The payment of two thousand one hundred dollars, principal of the loan, shall be paid by the debtor spouses jointly and severally to the creditor, in three installments as follows: seven hundred sixty-six dollars and sixty-seven cents on January first of the year nineteen hundred twenty-six; and another six hundred sixty-six dollars and sixty-seven cents on the same day and month of the year nineteen hundred twenty-seven; and six hundred sixty-six dollars and sixty-six cents on

---

[9] As stated by Mr. Justice Cardozo in *Reed* v. *Allen*, 286 U. S. 191, 209 (1932): "A system of procedure is perverted from its proper function when it multiplies impediments to justice without the warrant of clear necessity." *Cf.* also: L. Hand, *The Speech of Justice*, 29 Harv. L. Rev. 617 (1916); F. Cohen, *Ethical Systems and Legal Ideals* (1933); Cahn, *The Sense of Injustice* (1949); *id., Moral Decision: Right and Wrong, in the Light of American Law* (1955); Castán, *La Idea de Equidad y su Relación con Otros Conceptos, Morales y Jurídicos, Afines,* 188 Rev. de Legis. y Jurisp. 217, 361 (1950); *id., La Formulación Judicial del Derecho* (1954).

the same day and month of the year nineteen hundred twenty eight: all of which payments shall be made in the place of business of the creditor, located in Mayagüez, without delay.

SIXTH: The interest stipulated in this contract is 12 per cent per annum, which the debtors bind themselves to pay to the creditor Antonio Vivaldi Pacheco in annual payments as they become due.

"SEVENTH: To secure the payment of the loan in question, as well as to secure the interest up to the sum of two hundred and fifty dollars, and the costs, expenses and attorney's fees in case of judicial claim, up to the sum of two hundred and fifty dollars, the spouses Domingo Piovanetti and Clarisa Dumont constitute a voluntary mortgage in favor of Antonio Vivaldi Pacheco on the urban property previously described, with all its present belongings and rights attached thereto, and with whatever is hereinafter attached thereto.

"EIGHTH: Where annual payment of interest is due and not paid, or the first installment for the payment of the principal is due and not paid, the mortgage shall be considered due in its entirety and the creditor entitled to recovery through a summary foreclosure proceedings."

The question for determination is the extension of the mortgage to the interest agreed. We have before us a question strictly of Mortgage Law. The proposition which we must consider is that the interest stipulated in a mortgage, is only secured by mortgage after expiration of the obligation which it secures, if the parties have expressly agreed that the same rate of interest shall govern after expiration of the obligation "until its total reimbursement" or "until the indebtedness is fully settled" or "until full payment"; that in the absence of such an express agreement, the only interest secured by the mortgage after maturity date of the obligation is the legal interest at the rate of 6 per cent per annum from the date the debtor is in default. We believe the question must be reexamined.

The sections of the Mortgage Law of Puerto Rico concerning the security of interest, are the following:

Article 147—30 L.P.R.A. § 260, p. 775—provides: "A mortgage creditor may proceed against the property

mortgaged to recover interest due, *no matter at what time the principal is payable;* but if there should be a third person interested in said property whom the proceedings might prejudice, the sum demanded can not exceed a sum representing the unpaid interest due for the two years last past and the part due for the current year." (Italics ours.)

Article 148—30 L.P.R.A. § 261, p. 775—provides:

"Such part of the interest the payment of which the creditor can not enforce by means of a real mortgage action, he may seek to recover by means of a personal action, and he shall be considered with regard thereto, in the event of insolvency proceedings, as a creditor protected by a public instrument (*acreedor escriturario*)."

Article 145—30 L.P.R.A. § 258, p. 774—provides:

"The interest on the loan shall not be held to be secured by the mortgage in the form prescribed by section 210 of this title [art. 114] unless *the record itself shall show the agreement and amount of such interest.*" (Italics and brackets ours.)

Article 114—30 L.P.R.A. § 210, p. 753—provides:

"A mortgage constituted to secure a credit which earns interest, shall secure with regard to third persons, in addition to the principal, *only the interest for the two years last past and that part of the current year which may have accrued.*" (Italics ours.)

Article 115—30 L.P.R.A. § 211, p. 756—provides:

"After the expiration of three years from the date the loan began to earn interest which remains unpaid, the creditor may demand that the mortgage created be extended on the same mortgaged property, for the purpose of securing the interest corresponding to the first of said years, but only in the case that the obligation to pay part of the interest has matured, and the debtor has failed to satisfy it.

"If the creditor should avail himself of this right after the expiration of the three years, he may demand that the

mortgage be extended to cover all the interest which at the time of making such extension may not be secured by the first mortgage; but in no case shall the mortgage created prejudice a person who had previously and after the two years acquired an interest in the mortgaged property.

"If the debtor should not agree to such extension, the creditor may bring a declaratory action to secure it and have a cautionary notice entered of the action he may bring."

Article 116—30 L.P.R.A. § 212, p. 757—provides: "If the mortgaged estate should not belong to the debtor, the creditor can not demand that the extension of the mortgage referred to in the preceding section be constituted thereon; but he may exercise a similar right with regard to any other immovable property which the same debtor may hold, and which he can mortgage."

After examining all the provisions concerning security of interests by mortgage, it appears, according to Roca Sastre, *that irrespective of the agreement between the parties,* three systems may be distinguished: (*a*) *the indefinite guarantee system,* where the mortgage secures unlimitedly all the interest earned by the mortgage credit, *placing the accessory credit of interest in the same footing with the principal credit* since once the Registry shows the amount of principal and the rate of interest it earns, the requirement of the mortgage institution is sufficiently met.

(*b*) *The top system* in which the mortgage is only extended *ope legis,* to secure a specific amount or amounts of interest either by specifying a certain number of annual payments of interest (§ 114) *or a global rate over the principal.*

(*c*) *The extension of mortgage system* where the mortgage "only secures the principal of the loan, but not the interest; yet, since each time the payment of interest becomes due, a new credit arises over the principal, the creditor is entitled to demand that a new mortgage of

extension be executed to cover all the unpaid interest, and so on successively."

Roca Sastre continues: "in the indefinite guarantee system" and in the "top system" *without the need of an agreement between the parties "it may be said that the interest is secured by means of a tacit legal mortgage,"* while in the "extension of mortgage system" the security is one of an express legal mortgage.

Roca Sastre continues: "Which of these three systems does our legislation follow? It may be said that, as in many other Latin legislations it follows the three systems according to each specific case. Therefore, it adopts a mixed system or to express it better, an integral system. A distinction must be made of the role played by such systems in each of the following three assumptions:

(1) where, *no acts of conveyance or encumbrance of the mortgaged property are performed,* after the mortgage is constituted, the first system governs, that is to say, the mortgage security operates for the benefit of all interest unpaid and unprescribed. . .

(2) where, *a third purchaser of the property or of a property right thereon appears,* after the mortgage is constituted, the second system is adopted, that is, the top amount of mortgage coverage for unpaid interest ($ 114) . . . In order that this top interest be secured by mortgage against third persons, it is necessary that the *stipulation* of interest and the *amount* thereof be recorded . . .

(3) where the mortgaged property *has not passed to the hands of a third purchaser*—whether or not property rights have been subsequently constituted and recorded thereon— the mortgagee may ask for an extension of the mortgage, or rather for a new mortgage by extension, to secure the corresponding interest." [Vide: IV Roca Sastre—*Derecho Hipotecario*—333–39 (fifth ed., Casa Editorial Bosch, 1954)]. (Italics ours.)

This is what the law establishes, in the absence of an agreement between the parties, as an implied legal mortgage in the first two cases and as an express legal mortgage in case of an extension of the mortgage.

What is understood by an implied legal mortgage? In the parliamentary discussions concerning the Mortgage Bill of 1861—which is the basis of our present law—the delegate Ortiz de Zárate stated the following: " . . . This law tends, above all, to secure the rights of third persons; and since there is no need to abolish completely the implied legal mortgages to secure the rights of third persons, I believe they have not been abolished. In my opinion, this law has no object other than to grant third persons confidence and security, that they be sure, completely sure, that nobody will snatch from them the mortgages which they have acquired once they are recorded in the registry. Aside from this, I believe mortgages remain as before . . ."

The delegate Permanyer, answering the objections of Ortiz de Zárate, expressed himself as follows: " . . . I recall, and I do not know to what extent this may be a defect, that according to Ortiz de Zárate a mixed system was adopted in the Mortgage Bill: it is not the subsistence of the implied legal mortgages; neither is it the complete abolition of those same mortgages. To me, this seems to be the view point under which Ortiz de Zárate challenged the bill in relation to the modification of mortgages.

"Well, unfortunately Mr. Ortiz de Zárate has also made a mistake in his way of considering the law, in the way of defining and understanding the system on which it is based, because, let us say it once and for all, there is no such mixed system; the reform in this point is as radical as it was convenient to make it. Legal mortgages subsist because they must subsist; but the general mortgages, the implied mortgages, and also the hidden encumbrances, the destruction of which was the main and true problem which

the reform had to solve, disappear or are going to disappear completely . . . .

"But in recalling, gentlemen delegates, in what consists the novelty, the specialty of these conditions to which the legal mortgage will be hereafter subjected, we readily note that it is not a mixed system, it is not an eclectic system, but a radically reformatory system, but prudently so, for it only reforms that which was acting as an obstacle to the growth of the territorial credit. *Fortunately, the legal mortgages subsist in the cases for which they were formerly created, provided those mortgages might not prejudice third persons without being given the convenient publicity;* as long as they cease to be encumbered by liens which are concealed from the inquiry made by those who are going to acquire real property, everything remains perfectly satisfactory, and it is that clandestinity, and it only, which is affected by the reform we are discussing, but it is meant to utterly eradicate it" . . . . [Vide: Telesforo Gómez Rodríguez, *Observaciones a la Ley Hipotecaria y Discusión Parlamentaria o Colección de los Discursos Pronunciados en el Senado y Congreso de los Diputados al discutirse esta Ley* (edited by the Imprenta de la Revista de Legislación, in charge of Julián Morales, 1861, pp. 187 and 216 to 217)].

In Aragonés' *Compendio de Legislación Hipotecaria* implied legal mortgages are defined as "those which by operation of law encumber the real property without need of any external act born of a written agreement put in a document and of the subsequent registration thereof." Aragonés himself, in commenting on the three implied mortgages which prevail in the Mortgage Law of 1861, states that the first of them is *"the one which corresponds to the creditor on account of loans or obligations drawing interest for an amount which shall not exceed the amount for the last two years past-due and for the current annual payment.* The principle of the extension of the mortgage, by virtue of which the mortgage covered all interest accrued and unpaid,

served as basis for the law. In determining the amount for which the property was liable, the interest to be secured was taken into account and instead of carrying the basis to the limit and declaring that the property would not guarantee more than the amount expressly stipulated, and therefore, that whenever interest was intended to be secured, it had to be expressly set forth, *the implied mortgage was accepted,* declaring that unless otherwise agreed, the estate secures, in addition to the principal, the interest earned by this principal for two years and for the current annual payment. [Vide: 2 Aragonés—*Compendio de Legislación Hipotecaria*—47–8 (edited by Establecimiento Tipográfico of Jaime Ratés Madrid, 1911)]. (Italics ours.)

Galindo and Escosura say that "article 114 has introduced a significant variation in the ancient law. . ." (prior to 1861). In said law "the constitution of a mortgage as an accessory to the loan contract, secured not only the principal, but also all the interest that by additional agreement appeared therefrom, *and which were not paid at the time of the foreclosure. This legislation prevails as to the debtor and the original creditor where there are no third persons whose interest might be prejudiced thereby.* But in the case of a second mortgagee, § 114 provides that the mortgage only secures to the prejudice of a third person, in addition to the principal, the interest for the two years last past and that part of the current third year which may have accrued.

"We doubt the convenience and compatibility of this provision with the principles that should prevail, because it is unusual that the action of the creditor to claim the interest should be transmitted from one annual payment to another *without intervening therein the consent of the contracting parties.* It is beyond reason that the property rights embodied in the thing and which always preserve this quality while they are not foreclosed and while the thing by them affected exists, should become extinguished without the latter becoming extinguished or the rights foreclosed: It is beyond

reason that the property right to claim the interest for the first three years on account of the mortgage action should change its nature and become personal at the fourth, fifth or sixth year, and resort to two different and variable actions in order to claim debts of a similar origin, issuing from the same contract and based on the same document . . . .

"What forbearance can the mortgagee have for the mortgagor, what extensions can he grant him to meet the payment of the interest which he cannot pay at the moment, if when he slackens an inch he is in danger of losing all the other interest which remains unpaid? None: he will not take his eyes away from the debtor, like a vulture over its prey, and hardly has the maturity day arrived when he will be on him demanding either payment or the extension of the mortgage which will secure him the interest earned. . . .

"No less unreasonable is the presumption *juris et de jure* which is sought to be introduced to the effect that 'the creditor waives the mortgage as to the interest prior to the last three years, should he fail to claim them or to demand an extension of the mortgage created on the same mortgaged property' because if such presumption were acceptable the same thing would hold true for the mortgage, assuming that if no demand is made *three or four years after expiration of the term for which the loan was executed* it is because the indebtedness was paid." [Vide: III Galindo y Escosura —*Comentarios a la Legislación Hipotecaria*—235–37 (edited by Establecimiento Tipográfico of Antonio Marzo, 1903)].

As may be seen, when Roca Sastre says that the indefinite guarantee system—Mortgage Law prior to 1861 but preserved in the law subsequent to 1861 where there are no third persons—as well as the top system—Mortgage Law subsequent to 1861 still in force in Spain—actually create an implied legal mortgage which needs of no agreement or registration, it merely formulates with exact accu-.

racy the legislative intent as well as the gloss corresponding to the mortgage institution.

Now then, it is argued that the only interest secured is the interest accrued during the term of the obligation —typical of the ordinary mortgage, for which § 114 need not have been enacted—and not the interest earned after maturity—typical of the implied legal mortgage consecrated in § 114. Such conclusion is in open conflict with the historical content of the mortgage institution under our attention prior to 1861 as well as with its legislative intent subsequent to 1861. It lends itself, besides, to indirectly sanctioning the principle of compelling the foreclosure, which principle is contrary to all the principles coordinated in the law itself.

In this aspect of the extension of the mortgage to secure the interest after maturity, the commentators have favored the principle of indefinite guarantee where there is no third person and the top system where there is such a third person.

The doubt in the sense that if the mortgage to secure interest is extended to interest accrued after maturity of the obligation, has also been clarified by the commentators who are contemporaneous with the mortgage institution as well as by subsequent scientific rectifications. Let us hear what Barrachina has to say: "Does the fact that the mortgage is extended to the interest includes only the interest accrued and not paid within the term of the loan contract, or also the interest running after the expiration of the term of the contract, which interest accrues only because the mortgagee has failed to foreclose the property, after the guaranteed obligation has matured. . . . ? We do subscribe to the affirmative view . . . in either of the two cases, the legal provision is conclusive; it does not distinguish between different kinds of annual payments; the mortgage secures them all if no prejudice is caused to a third party; if there is a third party, either because he has acquired the real property or because it is encumbered in his favor, the

release from responsibility occurs and the mortgage only secures the interest corresponding to such annual payments, which means that the mortgage burden entails, in that respect, two responsibilities: one concerning the principal credit, the other the interest limited to the period of time previously referred to; a criterion that renders the words 'shall secure' employed in the provision which covers these two responsibilities, as meaning the unit of guarantee of the mortgagee's right, running hand in hand with the unit thing encumbered by the obligation, of principal as well as of interest.

"There is no law compelling the mortgagee to foreclose as soon as the obligation expires; he already knows that the latter prescribes and in the course of 20 years which is the lifetime of the mortgage foreclosure proceeding, he avails of his right by not claiming; he will suffer enough prejudice if he lets year after year run without collecting the interest, for he may fall squarely within § 114 if there are other subsequent mortgagees and for such reason, he will be entitled only, as a penalty for his passiveness, to interest for not more than three years"; [Vide: 3 Barrachina—*Comentarios a la Ley Hipoptecaria*—86–88 (edited by Establecimiento Tipográfico of J. Armengot e Hijos, 1911)]. (Italics ours.)

Roca Sastre, on the other hand, referring to the top system to which we have previously referred, states: "we believe that the credit interest secured by mortgage by operation of law may be that accrued during the term of the contract of the indebtedness as well as the interest accrued after maturity. (P) La Rica does not think so, for he says that in the absence of a stipulation to the contrary, the security covers, to the prejudice of third persons, two years and that part of the current year which may have accrued, that is, three years, *provided* the term of the mortgage is equal to or exceeds three years, for if the term is shorter

*the only interest to be secured is the interest earned during the term of the contract.*

"This opinion cannot prevail, because § 114 makes no distinction between one and the other since it refers to credit interest in general, which includes both the interest accrued before maturity of the debt, and the interest accrued thereafter, for the latter accrues during a period of implied extension of the term of the contract. —[Footnote: This, aside from the fact that a loan contract may be constituted for an indefinite time] —Said § 114 speaks of interest for the two years last past and that part of the current year which may have accrued, and therefore, since the interest due meets this requirement, we need not determine whether it accrued during or after the term of the contract. Otherwise, the law would rather encourage the exercise of the foreclosure proceeding, rendering difficult to the debtor the relief afforded by the creditors' tolerance not to claim repayment of the loan, thus disturbing thereby the territorial credit." (IV Roca Sastre 338, *op. cit.*) (Brackets ours.)

Morell's text, which seems to have caused our former pronouncement in the sense that after maturity of the obligation no interest other than legal interest may be recovered, contemplates two cases which are completely different from the ordinary case: (1) the case where it has been agreed that the mortgage shall not secure interest of any kind, and (2) the case where interest has been stipulated but its amount has not been stated. Here follows Morell's text coordinated insofar as pertinent to the question under our consideration:

"By combining § 114 with § § 145 and 147 it appears that if in the mortgage registration *it does not appear that any interest or any amount therefor has been stipulated*, the mortgaged property shall not be liable, to the prejudice of third persons, for any interest or it will only secure the legal interest. If the stipulation of interest and the amount thereof is set forth (6, 8, or 12%) § 114 governs. . . .

"Barrachina, presents the following question: Does the fact that the mortgage is extended to the interest includes only the interest accrued and not paid within the term of the loan contract, or also the interest running after the expiration of the term of the contract, which interest, accrues only because the mortgagee has failed to foreclose the property, after the guaranteed obligation has matured?

"The legal provision, he says, is conclusive; it does not distinguish between different kinds of annual payments; the mortgage secures them all if no prejudice is caused to a third party . . . There is no law compelling the mortgagee to foreclose as soon as the obligation expires; he already knows that the latter prescribes and in the course of 20 years which is the lifetime of the mortgage foreclosure proceeding, he avails of his right by not claiming . . . Now then, as to the interest subsequent to the maturity date of the obligation, one must adhere to whatever is deemed proper under the stipulations of the contract to that effect, *for it might happen that only interest at the legal rate may be recovered from the time it is lawfully inferred that default has been incurred.*" [Vide: 3 Morell—*Comentarios a la Legislación Hipotecaria*—pp. 739–40 and 145–46 (second edition revised and enlarged by Editorial Reus (S.A.) of 1928)]. (Italics ours.)

Why does Morell state that "as to the interest subsequent to the maturity date of the obligation, one must adhere to whatever is deemed proper under the stipulations of the contract?" The reason is very simple: because besides the implied legal mortgage recognized by § 114, which, as we have seen, needs of no agreement nor of the corresponding registration, the stipulation of interest and its rate being sufficient for its effectiveness prior to or after maturity—Judgment of December 10, 1898; III Roca Sastre and Molina Juyol, *Jurisprudencia Registral* 442–45 (Casa Editorial Bosch, 1953 ed.)—there may exist mortgages where the principal alone is guaranteed or mortgages with stipulated interest but without fixing the rate, or at a legal

rate.  These are usually the mortgages securing a current
account or the opening of an account, but not the mortgages
where specific interest has been fixed in which case § 114
prevails.

If no interest has been stipulated, it is only natural that
the provisions of the Mortgage Law which determine the
extension of the mortgage security to the interest shall not
prevail.  That is why Morell, in commenting § 145 of the
Mortgage Law which requires the stipulation of interest and
the amount thereof in order that the mortgage security
should include the interest, makes reference to a civil insti-
tution analogous to the mortgage institution, that of § 1646
of our Civil Code which provides:  Interest shall only be owed
when it has been expressly stipulated.  But Morell must not
be attributed the intention of subordinating the mortgage
system to the civil system because he expressly believes in
the autonomy of a Real Property Mortgage Law which
is known in Mortgage Law as the substantivity theory.
1 Morell, *Comentarios a la Legislación Hipotecaria*, 18
*et seq.* (2d ed., Editorial Reus, 1925.)

The concept of accessoriness or substantivity of the
mortgage has nothing to do with this question.  This is not
the proper time for going into the critical discussion of
whether a mortgage is an immobilized form which is only
animated by the will of the civil obligation—theory of the
accessoriness—or if it is an abstract entity completely dis-
connected from the credit—theory of the substantial right.
For the purpose of this study, we need only state that there
is no conflict whatsoever between the mortgage regulated by
the Civil Code and the mortgage regulated by the Mortgage
Law concerning the extension of the mortgage security to
the interest, which is the matter concerning us here.

Our Civil Code, as well as the Spanish Civil Code, only
contains "an exposition of the essential principles of the
mortgage contract concerning its nature and effects;  because
its development and regulation in all other aspects was en-

trusted to the Mortgage Law which would continue in force as a special law complementing the Code, the authors thereof were compelled to expressly set forth the subsistence of said law," says Manresa in his commentary to § 1880 of the Spanish Civil Code, equivalent to § 1779 of the Civil Code of Puerto Rico—31 L.P.R.A. § 5047—which provides: "The form, *extension*, and *effects* of the mortgage, as well as all that relating to its creation, modification, and extinction, and all that which may not have been included in this chapter, shall be subject to the provisions of the Mortgage Law, which continues in force." Manresa continues: "despite the clearness of its terms there is not unanimous agreement in the determination of its sense or in the construction of its precept, it being understood by some that the provisions of said law (Mortgage Law) continued in force only insofar as they had not been modified by the Code [Civil Code] since the latter being subsequent to the Mortgage Law, it was of course deduced, in their opinion, that upon the lawmaker regulating in a different manner the juridical principles connected with the provisions of the Mortgage Law, he was also repealing or setting aside whatever was inconsistent with the provisions of said Code.

"Contrariwise, others understood that said law (Mortgage Law) continued in force in all its parts because the clear and manifest will of the authors of the new legal body [Civil Code] which was set forth expressly and without any limitation in the present section is that the special law should prevail, in any provision not inconsistent with the provisions set forth *in the special chapter dedicated to mortgages*—and since the few provisions of this Code [the Civil Code] *have introduced no modification or innovation whatsoever to the previous provisions, as has been repeatedly held by the Supreme Court and the General Directorate* . . . . thus the provisions of said law continued in force in all their parts and purity despite the enactment of the new legal body, which, although in its § 1976 [our final provision] repealed

all former laws, usages and customs, it preserved, however, those which, like the Mortgage Law, said Code had allowed to stand . . .

" . . . That is to say, that the Mortgage Law, insofar as it regarded the mortgage as a contract or as a property right, subsists as suppletory or complementary to the Code and as such remains in force in all its purity and integrity *because the sections of said chapter have in no way reformed said law but have substantially conformed to its provision":* 12 Manresa—*Comentarios al Código Civil Español* 547–49 (5th ed., Instituto Editorial Reus, 1951). (Italics and brackets ours.)

The very commentators of the Spanish Civil Code, of the Spanish Civil Law, or of the Spanish Common Law, when referring to the extension of the mortgage security to the interest, apply § 114 of the Mortgage Law or the mortgage principle of the specialty corresponding thereto. Let us hear what Federico Puig Peña has to say:

*"Accessory obligations of the credit.—The promise of interest.—*The mortgage, besides securing the total amount of the debt which it guarantees, also secures the performance of other promises of a second degree, such as those concerning interest and costs. Above all, it must be stated, however, that if the credit does not draw interest of any kind, there is no reason for raising the problem of the objective extension of the mortgage security to the interest. If there is nothing to be secured, there is nothing to be said about the extension of the mortgage security. Only, of course, if this accessory promise has been indicated in the document and registration constituting the security, shall the mortgage coverage be extended to the interest fixed in the amount and to the extent set forth in the documents. Consequently, it is to such documents that one must look in order to comply with the will of the parties in such respect, provided [that] the aforesaid stipulation does not presuppose the possibility of collecting interest for a period exceeding 5 years, since pursuant to the second paragraph of § 114, in no case shall it be agreed that the mortgage shall secure interest for a term exceeding 5 years.

"Now then: it may well happen that the *mortgage deed states nothing concerning the scope of the interest it secures.* In this case a distinction must be made depending on whether or not the property has passed to the hands of a third purchaser. *If the mortgage has not passed to the hands of a third purchaser* then, in principle, there is no problem: *the mortgage creditor may perfectly well seek payment of all the interest due for the whole period that has elapsed since the establishment of the security,* of course, only as long as the interest has not prescribed pursuant to the ordinary provisions of the Civil Law (Art. 114 of the Law and Judgment of March 18, 1946).

"Yet, *when the mortgaged property has passed to the hands of a third purchaser,* then it is a different question because it is necessary 'for the interest and benefit of the third persons,' to establish specifically the maximum scope of the liability of the property pursuant to the security established. This same consideration moved the lawmaker in 1861 to establish the top system for the benefit of the 'third persons' [16], which criterion has prevailed in the present law upon setting forth in its § 114 that, except otherwise agreed, the mortgage constituted to secure a credit which earns interest shall secure, with regard to third persons in addition to the principal, only the interest for the 2 years last past and that part of the current year which may have accrued.[17]

---

[16] Under § 114, the concept of third person refers to anyone who, without having participated in the constitution of the mortgage, acquires and records the ownership or other real right on the property; but this concept is relative, and refers to a given moment as of which the interest is computed for the 2 years last past and that part of the current year which may have accrued. *The opinion generally prevailing connects that moment with the commencement of the judicial proceeding* at the instance of a mortgage creditor and more specifically with the date when the cautionary notice of attachment is entered in the foreclosure proceeding or with the date of the marginal note in the special summary proceeding: and thus, a third party is one who at that moment has his right recorded, any other person who subsequently records being excluded as such for the purpose of the extension of the mortgage to the interest and the costs. (Judgment of July 12, 1941.)

[17] *The top system concerning a third person operates ostensibly in the absence of an authorized augmentative agreement pursuant to that same § 114,* for if there is such agreement the same must be respected provided that, as we stated in the text, it does not exceed a claim for 5 annual payments. The validity of this pact to increase the interest

"Therefore, what about the interest which is not included within the top system established by § 114? Section 148 of the act specifically states that such part of the interest, the payment of which the creditor cannot enforce by means of a real mortgage action, may be recovered by him by means of a personal action, and he shall be considered with regard thereto, in the event of insolvency proceedings, as a creditor protected by a public instrument (*acreedor escriturario*), and except as otherwise provided in § 140.

"Irrespective of the preceding automatism by virtue of which the mortgage is extended *ope legis* to the interest in question, the law grants the mortgagee a new power consisting in asking for the extension of the mortgage and which, by the way, must also change depending on whether or not the property has passed into the hands of a third purchaser. If it has not passed into the hands of a third person, then the question is very simple: the mortgagee may perfectly well ask for the extension of the mortgage to secure all due and unpaid interest which was not secured by the legal top rate provided by § 114. The only thing that must be borne in mind is that this extension of the mortgage should not prejudice, logically, in no case, the property rights recorded prior thereto.

"If the mortgaged property, on the contrary, did not belong any longer to the debtor, the creditor cannot, naturally, demand that the mortgage created be extended on the same mortgaged property, but he may exercise a similar right with regard to any other property which the same debtor may possess, which may be mortgaged. (§ 15, par. 3.)

"This question of the extension of the mortgage poses two problems: the first refers to its convenience and the second concerns the way or manner of enforcing the aforesaid extension. As to the first, its advantages are certainly discussed in the doctrine, for it cannot be understood why the creditor should find it necessary to institute an entire proceeding to

---

was discussed in the ancient Spanish Mortgage Law, but the criterion of its possibility prevailed as long as the amount of interest to which the mortgage security extended was specifically fixed. A rather ambiguous decision scrutinized a little concerning that particular; but the decisions of February 14 and March 15, 1935, admitted as unquestionable the right of the interested parties to enter into an agreement where the mortgage secured the interest during the whole term of the contract provided the amount which the mortgage secured was specifically stated.

accomplish the same objective which he may well accomplish through the summary foreclosure proceeding claiming the interest in due time; but, this notwithstanding, it seems to have been preserved in the law because of the possibility that in some isolated case it may be useful.

"As to the manner of enforcing the extension of the mortgage there will be no problem if there is an agreement between the interested parties. If there is no such agreement, the corresponding ordinary action according to the sum in issue would be filed, and the judicial decision obtained, the creditor being perfectly able to obtain the cautionary notice of the claim." III–II Puig Peña—*Tratado de Derecho Civil Español*—99–101 (Editorial Revista de Derecho Privado, 1951 ed.) (Italics and brackets ours.) See also: I Demófilo de Buen —*Derecho Civil Común*—332; 3 Sánchez Román—*Estudios de Derecho Civil*—804 (Estudio Tipográfico Sucesores de Rivadeneyra, 2d ed. 1900); I Clemente de Diego—*Instituciones de Derecho Civil Español*—467 (Librería General de Victoriano Suárez, 1941 ed.).

This gloss, especially that of Puig Peña, shows the *punctum saliens* of the mortgage security for interest: (1) the eliminative or limitative agreement of the parties set forth in a document—the concept of "except otherwise agreed"—; (2) the augmentative agreement up to 5 annual payments: (3) the agreement where nothing is stated concerning the scope of the interest it secures—typical case of the classical Roman implied agreement embodied in § 114.

As may be seen, there is no difference whatsoever between the Mortgage Law and the Civil Law concerning the extension of the mortgage to secure interest.

Concerning the "except otherwise agreed" or the limitative agreement, Roca Sastre examines this question from two points of view: (1) "that of the problem of the extension of the mortgage to secure interest by *operation of law*, that is, irrespective of the will of the interested parties," and (2) "where there is an agreement". According to Roca Sastre: "the agreement between the interested parties may affect

the extension of the mortgage to secure the interest in these three directions: by *eliminating* it, by *extending* or *reducing* it in relation to the number of annual payments specified by law, and by *substituting* it for a fixed amount. IV Roca Sastre 342—*op.* and ed. *cit.*—For this reason, the agreement as to interest must only be examined as to these two aspects: (1) to determine if any interest has been stipulated and at what rate; (2) to determine if there is any restrictive or augmentative agreement as to the interest.

There was never any doubt as to the power of the parties to eliminate, reduce or substitute the extension of the mortgage to secure interest for a fixed amount. The doubt arose as to the power to *extend* it beyond the limit of the 2 annual payments and that part of the current year, which is provided by § 114 as the top amount and on behalf of third persons. "In principle, it did not seem lawful to exceed the legal top rate for private agreements cannot override the high legislative intent of favoring the territorial credit. This notwithstanding, since the reason for the existence of such top rates was to avoid *surprises* to the subsequent purchasers, by eliminating all sort of ambiguity, it was understood that if the agreement fixed the exact amount to which the mortgage to secure the interest extended, such dangers as § 114 sought to avoid were thereby overcome.

"This theory found expression in the General Directorate which recognized in its decisions of February 14 and March 15, 1935, as 'unquestionable the right of the interested parties to enter into an agreement where the mortgage secured the interest during the whole term of the contract' provided the amount which the mortgage secured was specifically stated.

"Hence, *said extension of mortgage to secure interest* could be stipulated, but fixing the lump sum for which the mortgaged property was liable. It transpired from said decisions that there was no need of expressing this lump

sum when several annual payments thereof were specifically fixed". (Italics ours.) (IV Roca Sastre 343—*op*. and ed. *cit.*)

This pronouncement of the General Directorate of the Registries and the Notarial Office brought about the amendment of § 114 of the Mortgage Law of December 30, 1944, approved by Decree of February 8, 1946, as follows:

"*Except otherwise agreed,* the mortgage constituted to secure a credit which earns interest, shall secure, to the prejudice of third persons, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued.

"*Under no circumstances shall it be agreed that the mortgage shall secure interest for a term exceeding 5 years.*" (Italics ours.) IV Roca Sastre 343 *op*. and ed. *cit*.

This amendment consecrated the two doctrines which the jurisprudence, as well as the gloss, had attributed to § 114: (1) that by operation of law and without need of any express agreement the interest corresponding to two years and the current year were secured unless the parties had otherwise agreed to eliminate, reduce or substitute said guarantee; (2) that, by virtue of an express agreement the interest would be secured for some time beyond the two years last past and the current year but never for an amount of interest greater than that corresponding to the interest for 5 years.

As may be seen, when it was stated in a mortgage deed under the provisions of the Spanish Mortgage Law prior to 1946 that the mortgage would secure the interest for the whole term of the contract, the real juridical effect of such agreement was that the mortgage would extend beyond the top rate of the two annual payments and that part of the current year which had accrued, provided: (1) "the amount which the mortgage secured was specifically stated"—Decisions of the General Directorate of February 14 and March

15, 1935—(IV Roca Sastre 343—*op.* and ed *cit.*) or (2) "the total amount of interest was set forth." (3 Morell 739 —*op.* and ed. *cit.*)

The present state of our Mortgage Law being the same as that prevailing in Spain prior to 1946, the agreement in our notarial practice to the effect that the mortgage secured the interest until the total reimbursement of the loan or until the debt is totally paid or until final payment of the loan, means nothing more than an additional security to the top amount provided by § 114, as regards third persons, if the amount of such interest is specifically determined by fixing a lump sum, or expressly set forth by fixing a total sum of annual payments of interest, in which cases the only limitation would be that of the statutory limitation top. With this, the requirement of specialty, as well as that of publicity, is regarded as having been met.

However, the argument is that in the absence of an express agreement to that effect the creditor is not entitled to the benefits of the implied legal mortgage provided by § 114 if the nonperformance is produced after maturity of the obligation.

The security of interest established by § 114 does not hinge on the date of the constitution of the mortgage or of the expiration of the obligation, nor on the date of the acquisition and registration by a third person, but on the nonperformance and subsequent foreclosure which may be within as well as outside the term of the obligation. The time to be considered always is the time when the claim is made (Morell) or the commencement of the judicial proceeding (Puig Peña). Such is the ruling also in the judgment of the Supreme Court of Spain of July 12, 1941, 14 *Repertorio de Jurisprudencia Civil* 270 (Instituto Editorial Reus, 1948 ed.) That is why Roca Sastre calls it the "procedural moment," which means "the moment when the juridical default is created, that is, from the time legal interest accrues (2) [footnote pursuant to § 126] 'this

interest as to third purchaser accrues from the moment demand is made' —already within the corresponding judicial proceeding" 3 Morell 744–45; IV Roca Sastre 337, *op.* and ed. *cit.* Dorta Duque, a learned Cuban writer on mortgages, sustains the same criterion. Manuel Dorta Duque, —*Curso de Legislación Hipotecaria*—128, (second ed. of Molina & Company, La Habana, Cuba 1941), provided the interest of the obligation appears recorded "either in lump sum or *specific rate*, in connection with the principal and for the time agreed." To be more specific by "lump sum" is understood a specific aggregate amount which is not subject to evaluation or circumstantial computation—typical case of the substitution—as we have already seen.

Insofar as the drafting of the document is concerned, if it is specified in a mortgage that it will secure $1,000 principal and its interest at 9 per cent, it is not necessary to set forth in the deed the maximum amount covered by the security for which interest is payable (Puig Peña), for as the amount is fixed by § 114 of the Mortgage Law, in an ordinary case, and as regards a third person, the only interest recoverable is such as accrued during the term provided in the aforesaid § 114. It was so held in the decision of December 10, 1898, by the General Directorate of Registries and the Notarial Office—III Roca Sastre and Molina Juyol, *Jurisprudencia Registral* 442–45 (Casa Editorial Bosch, 1953 ed.). In the aforesaid decision, the agreement in question provided "as security of a loan of 900 pesetas and accrued interest at 6 per cent per annum." In this case § 114 operates as an implied agreement additional to the express agreement, following the Roman tradition.

On the other hand, if a mortgage sets forth that the mortgage security shall be of $1,000 principal and its interest at 9 per cent up to $450 in an ordinary case, and as regards third persons, all the aggregate interest up to the fixed amount may be recovered. This was the decision of February 14, 1935, of the General Directorate of Registries

and Notarial Office. VII Roca Sastre and Molina Juyol, *Jurisprudencia Registral* 602–605. In the aforesaid new decision the agreement in question provided: "as security of the principal loan and for 3,000 pesetas more to secure the interest not secured by the law". In this case § 114 was abated by the express agreement of the parties beyond the top amount. See also the judgment of the Supreme Court of Spain of July 12, 1941; 14 *Repertorio de Jurisprudencia Civil* 270 (Instituto Editorial Reus, 1948 ed.).

We may now summarize that where in a mortgage deed there is an agreement as to the capital and interest at a specific rate or in a lump sum, there is no restrictive agreement of the parties eliminating, reducing or substituting the mortgage security on interest, if the mortgaged property still belongs to the debtor and there are no subsequent encumbrances, the principle of the unlimited guarantee governs without any other top limit than the prescription of the mortgage action after 20 years without the need of an express agreement to that effect.

If the mortgaged property has passed to the hands of another person or there are subsequent creditors, and the capital and interest at a specific rate are stipulated in the mortgage, the mortgage security on the interest is reduced to two full annual payments and to that part of the annual payment corresponding to the year of the foreclosure from the date the debtor is served with process within the summary proceeding; if there is an agreement as to capital and interest up to a specific fixed amount in the mortgage, the mortgage security on interest is extended up to the specific amount.

In the foreclosure of the mortgage credit, from the date the debtor is served with process if the summary foreclosure proceeding is instituted, since the same is equivalent to an anticipated judgment, or from the date of the judgment if the ordinary foreclosure proceeding has been filed, and until the date the property is sold at public auction, the foreclosing

creditors are not entitled to any other interest than the legal interest at 6 per cent which is the legal rate provided by the statute.

In the separate opinion rendered in the case of *Valcourt* v. *Iglesias*, 78 P.R.R. 598, 612 (1955), we concluded that: "As a practical question, the only default conceivable within the mortgage foreclosure proceeding is the judicial default, *i. e.*, the default incurred after the commencement of the proceeding," where the loan in question drew interest at a stipulated rate and the mortgaged property was still in the hands of the debtor. Now we elaborate said concept in the sense that default may occur in the case of a mortgage where no interest has been stipulated after demand on the debtor.

The case now under consideration deals with a loan of $2,100 payable in three annual instalments which shall accrue interest at 12 per cent per annum and the mortgage is constituted "to secure the payment of the loan in question, as well as to secure the interest up to the sum of two hundred dollars, and the costs, expenses and attorney's fees in case of judicial claim, up to the sum of two hundred and fifty dollars". The property was owned by the debtor at the time of the foreclosure and there is nothing indicating an interested third party. That being so, we should have applied the principle of the unlimited security and declare valid the summary proceeding. I dissent.